UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

NATHAN BROOKS                    *        CIVIL ACTION NO. 15-2280

VERSUS                           *        JUDGE DOHERTY

COMMISSIONER OF SOCIAL           *        MAGISTRATE JUDGE WHITEHURST
SECURITY

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Nathan Brooks, born in 1974, filed applications for a period of disability, disability insurance benefits and supplemental security income ("SSI") on August 3, 2011, alleging disability as of May 15, 2000, due to attention deficit hyperactivity disorder ("ADHD"), major recurrent depression, generalized anxiety disorder, bilateral carpal tunnel syndrome ("CTS"), radicular symptoms in the left upper extremity, and potential peripheral nerve injury in the upper extremities.  After a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision denying claimant's claim for benefits on March 13, 2014.  (Tr. 14-31).

Following the Appeals Council's denial of claimant's request for review (Tr. 1-4), claimant filed an action for judicial review in this Court on August 25, 2015.

## I.  FINDINGS AND CONCLUSIONS

### A. Standard of Review

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision

is supported by substantial evidence on the record as a whole.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971).  Substantial evidence is defined as more than a mere scintilla.  *Id*., 402 U.S. at 401, 91 S.Ct. at 1427.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder.  *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Id*. at 393.

**B. Burden of Proof**

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook,* 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.  *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).  The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the impairment prevents the claimant from doing past relevant work;

and (5) whether the impairment prevents the claimant from performing any other substantial

gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps.  *Leggett v. Chater*, 67 F.3d

558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth step to

establish the existence of other available substantial gainful employment that a claimant can

perform.  *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the Commissioner

identifies such employment, the burden shifts back to the claimant to prove that he could not

perform the alternative work identified.  *Id*. at 1302.  Throughout the process, the ultimate

burden of establishing disability remains with the claimant.  *Hames v. Heckler*, 707 F.2d 162,

165 (5th Cir. 1983).

## C. Analysis

After a review of the entire administrative record and the briefs filed by the parties, and

pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support

the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and

conclusions regarding claimant's disability is supported by substantial evidence, based on the

following:

### 1.  Medical Evidence[1]

Claimant chiefly complains of mental illness.  Additionally, he reports carpal tunnel syndrome, left arm radicular symptoms, and potential peripheral nerve injury.

### a. Mental Health Records

As to his mental complaints, claimant attended a consultative psychological evaluation with David Greenway, Ph.D., on November 23, 2011.  (Tr. 431).  Dr. Greenway considered the information provided to be of poor reliability.  Claimant's test performances and clinical presentation were inconsistent.  A test of feigning was positive.  While claimant described himself as being moderately socially affiliative, he said that he had no friends and did not like to be around people.

On examination, claimant had no evidence of a formal thought disorder.  (Tr. 432).  His insight and judgment appeared adequate.  His social skills were adequate.

Recent and remote memories appeared intact.  (Tr. 433).  Behavioral pace was even with consistent effort.  Response latency was normal.  Persistence at evaluative tasks was adequate.  His intelligence was estimated in the average range of intellectual functioning.

Dr. Greenway's diagnosis was malingering.  He considered the current evaluation findings to be a poorly reliable reflection of claimant's functional status.  Claimant presented as competent with reasonable affect and no indication of major mental health problems.  However, he complained of severe depression.

---

[1]Although of the medical evidence was reviewed, only those relating to the arguments are summarized herein.

Dr. Greenway noted that malingering was likely in this case.  He found that claimant's cognitive skills were adequate to understand, remember and carry out simple instructions, and to maintain attention to perform simple repetitive tasks for two-hour blocks of time.  He determined that claimant should be able to tolerate the stress associated with day-to-day work activity and demands.  He should be able to sustain effort and persist at a normal pace over the course of a routine 40-hour work week.  His social skills were adequate, and he should be able to relate to others, including supervisors and co-workers in employment settings.

On December 2, 2011, Dr. Sandip Sen, a state agency medical consultant, completed a Psychiatric Review Technique ("PRT"), in which he determined that claimant had mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistent or pace.  (Tr. 135-36).  He found that claimant had no repeated episodes of decompensation.  (Tr. 136).

Records from Dr. Edgardo Concepcion and Southeast Louisiana Hospital indicate extensive treatment for claimant's mental health impairments.  (Tr. 436-53, 473-86; 510-18, 523-30).  However, the records indicate that he experienced good control of his symptoms when compliant with medications.  (Tr. 479, 483-84, 515, 524, 526, 528).  By contrast, he had exacerbations in his symptoms when he did not take his medication as prescribed.  (Tr. 451-52, 525).

On March 23, 2010, claimant reported that his medications were working well.  (Tr. 361).  His mood and affect were good and stable, and there was no indication of medication misuse.  Dr. Concepcion's assessment was ADHD and major depression, recurrent.

5

Claimant continued to do well on his medications on March 28, 2011.  (Tr. 407).  The assessment was ADHD, major recurrent depression and generalized anxiety disorder.

On November 10, 2012, Dr. Concepcion completed a Mental Medical Source Statement consisting of a checklist and fill-in-the-blanks form, indicating that he had treated claimant since 2007, and saw him every two to three months.  (Tr. 469).  His diagnoses included bipolar disorder, anxiety disorder and ADHD.  Claimant's disorder was characterized by a disturbance of mood, accompanied by full or partial manic or depressive symptoms.  (Tr. 469).   He had a loss of interest in almost all activities, appetite disturbances with change of weight, and sleep disturbances.

Dr. Concepcion noted that claimant had decreased energy and feelings of worthlessness. He also had difficulty concentrating or thinking, along with paranoid thoughts.  (Tr. 469-70).  He stated that claimant's condition resulted in "marked" social functioning.  (Tr. 471).  He opined that claimant unable to interact independently, appropriately or effectively on a sustained basis with family members and others.

On March 26, 2013, claimant had a consultative psychological evaluation with Henry Lagarde, Ph.D.  (Tr. 501).  Claimant reported that he was able to perform all bathing, clothing and activities of daily living independently, and was able to prepare simple meals.  While claimant brought containers for eight different medications prescribed in his name, only three of them contained pills.  (Tr. 502).

Dr. Lagarde's impression from the evaluation was that claimant was inclined to exaggerate difficulties for disability purposes.  (Tr. 504).  He stated that the very antisocial nature of the personality behaviors as a child and adolescence supported the contention that he would

6

manipulate these evaluations for personal gain.  Additionally, his not having actual medication in

five medications bottles, while indicating that he took them, further suggested dissimulation.  Dr.

Lagarde also noted that three of his medications (Hydrocodone, Adderall and Alprazolam) had

potential for abuse.

Dr. Lagarde's diagnoses were dysthymic disorder and antisocial personality disorder.  He

noted that claimant's statements about his interpersonal problems and impulsive/aggressive

problems were not considered entirely valid.  He indicated that claimant exaggerated depression

symptoms, for example, emphasizing that he did not sleep at night.  Claimant also had

exaggerated psychotic symptomology, because what he reported as visual and auditory

hallucinations were not explained in a way which would clearly indicate that they were

hallucinations.  Additionally, claimant was in obvious good command of his cognitive

functioning and could explain such exaggerated phenomena quite well.

In conclusion, Dr. Lagarde opined that claimant was able to understand, remember and

carry out simple, detailed instructions; would be able to attend satisfactorily to simple tasks for

two-hour blocks of time, and would be able to maintain persistence and consistency at a full-time

job.  He stated that claimant would be able to cope satisfactorily with routine work stress if he

really intended to function adequately at a job and, in the same way, would be able to maintain

effective relationships with supervisors and co-workers.  (Tr. 505).

### b. Physical Health Records

As to claimant's physical complaints, examination at Iberia Comprehensive Community

Health Center ("ICCHC") on February 5, 2010 indicated good range of motion in all joints,

normal peripheral pulses in the upper and lower extremities, normal deep tendon reflexes, and

negative straight leg raising.  (Tr. 359-60).  Claimant did not complaint of hand or wrist pain.  The assessment was benign essential hypertension.  (Tr. 360).

Following a motor vehicle accident, claimant saw Dr. John Cobb at Lafayette Bone and Joint Clinic on February 2, 2011, complaining of neck, left shoulder, lower back and left leg pain.  (Tr. 412).  He had been on long-term disability due to an injury in 2000.

Cervical and lumbar x-rays were normal.  (Tr. 416).  The impression was post- traumatic cervical pain syndrome, sprain/strain of the cervical and lumbar spine, post-traumatic lumbar pain syndrome, left sacroiliac ("SI") joint and iliolumbar ligament injury and previous pelvis fracture, which was healed but aggravated by the accident.  Dr. Cobb recommended physical therapy for the cervical and lumbar spine and left SI joint, and prescribed Lortab, Soma and a Medrol Dosepak.  He stated that claimant was unable to work.  (Tr. 417).

Lumbar and cervical MRIs dated May 10, 2011, were normal.  (Tr. 420, 422, 423).  An MRI of the cervical spine was normal.  (Tr. 420).  Dr. Cobb encourage claimant to exercise his neck and back.  (Tr. 423).  He stated that claimant was not a surgical candidate, and gave him a release to light duty work.

On October 1, 2011, Dr. Andrea Murina performed a consultative examination.  (Tr. 425).  Claimant complained of carpal tunnel syndrome with numbness and pain, hypertension since 2000, and left hip pain radiating into his leg.  On examination, claimant's ambulation was normal.  He was able to dress and undress himself independently.

Examination of the spine and extremities showed +2 radial pulses with no edema, cyanosis, or clubbing of the extremities.  (Tr. 426).  Claimant had no swelling, redness or

8

effusion of the joints.  Gait was normal, and an assistive device was not necessary for ambulation.

Grip strength was 5/5 bilaterally.  (Tr. 427).  Claimant was able to button, zip and pick up a coin.  He was able to follow simple directions.

Motor strength of the proximal muscle groups was 5/5 in the upper extremities, 5/5 in the right lower extremity and 4/5 on the left.  Claimant had decreased sensation on the lateral hand and the left medial hand.

Sensory was intact in the lower extremities.  Deep tendon reflexes were +2 bilaterally.  Claimant had difficulty walking on his heels, toes, and performing heel-to-toe.  He could squat 25% to the floor without difficulty.

Dr. Murina stated that with regard to claimant's pelvis problems, he had normal range of motion in his hips.  He also had a mixed sensory deficit, which Dr. Murina concluded did not support a diagnosis of carpal tunnel syndrome, especially on the left wrist.  However, she found that there might be a mild carpal tunnel syndrom on the right wrist, which did not impose a limitation.  As to hypertension, Dr. Murina found no evidence of end organ damage.

On December 9, 2011, Dr. Charles K. Lee completed a Residual Functional Capacity ("RFC") Assessment for Disability Determination Services ("DDS"), in which he determined that claimant could lift/carry 50 pounds occasionally and 20 pounds frequently, stand/walk and sit about six hours in an eight-hour workday, and had unlimited push/pull ability.  (Tr. 137).  He was unlimited as to climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling, but occasionally limited as to climbing ladders/ropes/scaffolds.  (Tr. 137-38).  He had

no manipulative, visual, or communicative limitations.  (Tr. 138).  However, he had to avoid concentrated exposure to extreme cold, vibration, and hazards such as machinery and heights.

On February 8, 2012, claimant saw Dr. John B. Sledge, III of Lafayette Bone and Joint Clinic for complaints of low back pain, left lower extremity numbness and possible carpal tunnel syndrome.  (Tr. 459).  Dr. Sledge noted that claimant had last been seen at the office on January 19, 2012, and that EMG and nerve conduction studies of the upper extremities had been recommended at that time.  However, claimant had canceled that appointment.  Dr. Sledge recommended EMG/NCV studies.  (Tr. 460).

On December 3, 2012, claimant saw Dr. Sledge for wrist pain, right greater than left, and numbness and tingling in the hands.  (Tr. 489).  The assessment was bilateral carpal tunnel syndrome, radicular symptoms in the left upper extremity, and potential peripheral nerve injury in the upper extremities.  (Tr. 340).  Dr. Sledge recommended occupational therapy for the hands, and prescribed Soma for muscle spasms and Norco for pain.

Claimant returned on February 20, 2013.  (Tr. 519).  He had not received occupational therapy, because worker's compensation would not approve it.  He was wearing a splint, and advised to continue to do so.

On March 8, 2013, claimant attended a consultative examination with Dr. Kenneth A. Ritter.  (Tr. 491).  He reported a hospitalization in the last year for his mental problems.  On examination, claimant had a normal gait and station.  (Tr. 492).  Grip strengths were equal and 5/5 bilaterally.  He had negative straight leg raises bilaterally.

Range of motion of the joints was normal without redness, heat, tenderness or swelling of any joint.  Claimant had negative Tinel's signs bilaterally.  He had normal deep tendon reflexes,

10

strength and sensation.

Dr. Ritter noted that while claimant had complaints of back, hip, shoulder and neck pain, the examination of these areas was essentially normal.  (Tr. 493).  He further observed that claimant had undergone multiple work ups of these areas in the past without significant findings. He stated that claimant had apparently had a work up for suspected carpal tunnel syndrome, but it did not completely diagnose CTS.

Additionally, Dr. Ritter noted that claimant possibly had some degree of CTS, but he could not find that this limited claimant in any way.  He further observed that despite claimant's history of hypertension, he had normal blood pressure on examination.

Dr. Ritter completed a Medical Source Statement, in which he limited claimant to occasionally lifting up to 50 pounds and continuously lifting 20 pounds.  (Tr. 494).  He found that claimant could frequently carry up to 50 pounds and continuously carry up to 20 pounds. Claimant was able to sit, stand and/or walk for eight hours at one time without interruption, and sit, stand and/or walk a total of eight hours in an eight-hour workday.  (Tr. 495).  He checked that claimant did not require a cane to ambulate.

Further, Dr. Ritter found that claimant was able to reach, handle, finger, feel, and push/pull bilaterally, and operate foot controls continuously bilaterally.  (Tr. 496).  He noted that claimant was able to climb stairs, ramps, ladders and/or scaffolds, and continuously balance, stoop, kneel, crouch and/or crawl.  (Tr. 497).  He stated that he could find no physical lifting problems.  (Tr. 499).

On May 20, 2013, claimant returned to Dr. Sledge.  (Tr. 520).  He was not receiving occupational therapy, but was doing exercises at home.  Dr. Sledge advised him to continue

11

working on a home exercise program.

### 2. Hearing Testimony[2]

At the hearing held on October 3, 2013, claimant was 39 years old.  (Tr. 99).  He obtained a GED.  (Tr. 100).  He had past work experience as a tractor-trailer driver and welder's helper.  His last job was at Mel's Diner as a dishwasher for a few weeks in 2012.  (Tr. 99).

As to complaints, claimant reported that he had left-sided pain radiating down his left leg.  (Tr. 100-01).  He was unable to sit or walk for long periods.  He stated that his pain medication helped, but he was always in pain.  (Tr. 103).

Additionally, claimant complained of depression and anxiety, and had trouble sleeping and staying focused.  (Tr. 106).  He had previously received disability benefits, which stopped in 2010.  He reported that he had last used marijuana and cocaine months ago.  (Tr. 104-05, 112).

Regarding activities, claimant reported that he did no housework or yard work, and spent most of his day watching television, listening to the radio, and sitting and lying around. (Tr. 102).  He stated that he did not like to be around people and isolated himself.  (Tr. 106).  He reported, however, that he had friends and family that visited him.  (Tr. 102).  He also stated in his Function Report that he attended church.  (Tr. 304).

As to limitations, claimant testified that he could lift 10 to 15 pounds.  (Tr. 103).  He could walk for 10 to 15 minutes, and stand and sit for 15 minutes.  (Tr. 104).  He stated that he did not usually drive, but drove to the hearing.  (Tr. 107).  He had difficulty opening and carrying objects, and dropped things.  (Tr. 110).  He said that he had one good day per week.  (Tr. 113).

---

[2]Claimant had a previous hearing before ALJ Steven Graalman, who became ill and was unable to render a decision.  (Tr. 58-90; 93).

Harris N. Rowzie, who testified as a vocational expert ("VE"), classified claimant's past work as a tractor-trailer truck driver as medium with a Specific Vocational Preparation ("SVP") of 4, and a welder's helper as heavy with an SVP of 2. (Tr. 114-15). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education and past work experience; who was limited to sedentary work, with the ability to change positions; would be off-task five percent of the time or less; could perform only simple, repetitive tasks with one-through four-step instructions, and could have occasional contact with coworkers, supervisors and the public, but basically did things better with things than people. (Tr. 115). In response, Mr. Rowzie testified that claimant could not perform his past work, but could work as a sedentary assembler, of which there were 229,000 jobs nationally and 6,700 statewide; addresser, of which there were 101,000 jobs nationally and 400 statewide, and surveillance system monitor, of which there were 79,000 nationally and 1,300 statewide. (Tr. 115-16).

Claimant's attorney changed the hypothetical to add a marked deficit in claimant's ability to use his hands and wrists such that he could not repeatedly grasp, grip or handle. (Tr. 116). In response, the VE responded that there would be no jobs at the sedentary, unskilled level. (Tr. 117). When he asked whether any jobs would be available to a claimant who was unable to maintain attention and concentration for two-hour periods of time, or pace for a 40-hour week on a sustained basis every week, and would probably miss three days of work per month, Mr. Rowzie testified that no jobs would be available. (Tr. 117-18).

The ALJ changed the hypothetical to assume a claimant who was limited to light work with simple, repetitive tasks, one- through four-step instructions, occasional contact with others, but did better with things than people, and could not perform repetitive grasping, gripping, or

13

twisting of the wrist.  (Tr. 118).  In response, the VE testified that such claimant could work as a ticket taker, of which there were 107,000 jobs nationally and 1,600 statewide, and flagger, of which there were 68,000 jobs nationally and 1,100 statewide.

Claimant's attorney then asked if such claimant could perform the jobs of ticket taker or flagger  if he also had limitations in his abilities to sit or stand such that it was unlikely that he could sit or stand more 15 minutes at a time, or more than four hours in an eight-hour day.  (Tr. 119).  In response, Mr. Rowzie testified that he could not.  Counsel also asked if claimant could perform those jobs if he was unable to get along with coworkers, supervisors or the general public without exhibiting behavioral extremes and withdrawals, the VE stated that he might be able to do the flagger job, but not the ticket taker job.  (Tr. 120).

### 3. Claimant's Argument

Claimant argues that:

(1) The ALJ did not follow proper legal standards in determining whether the regulations directed a conclusion of disability, and should have accorded much greater weight to the opinions by claimant's long-time treating psychiatrist, Dr. Concepcion, and thereby decided that claimant did in fact have a medically determinable impairment of severity to meet the criteria of an impairment listed at §§ 12.04 (affective disorders) and 12.06 (anxiety-related disorders) in 20 C.F.R. Part 404, Subpart 1, Appendix 1;

(2) The ALJ's findings are not supported by substantial evidence in the record, because she relied too heavily on her own subjective impressions, ignoring medical opinion and treatment evidence and giving more weight than merited to findings of state examiners who either examined him one time or not at all;

(3) The ALJ's findings that claimant had the residual functional capacity ("RFC") to make a successful adjustment to work that exists in significant numbers in the national economy are not supported by substantial evidence in the record or by the opinions of vocational consultants, and

14

(4) Even if the ALJ failed to equate the opinions of claimant's long-time treating psychiatrist with criteria for meeting the listed impairment at § 12.04, the ALJ should have found in his favor because the combined impact of multiple impairments render him disabled even if no single impairment is deemed severe in and of itself under §§ 404.1523 and 416.923.

### a.  Did the ALJ Properly Weigh the Treating Physician's Opinion?

First, claimant argues that the ALJ should have accorded more weight to the opinions of his treating psychiatrist, Dr. Concepcion.  It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . .  other substantial evidence."  *Newton*, 209 F.3d at 455.

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Id*. at 456; *Greenspan*, 38 F.3d at 237.

In analyzing Dr. Concepcion's Mental Medical Source Statement, the ALJ stated that while she was cognizant of SSR 96-2p,[3] she was also aware that in order for the treating

---

[3]Social Security Ruling ("SSR") in 96-2p provides, in pertinent part: "[A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not

physician's statement to be accorded great weight, it must be consistent with the medical evidence.  (Tr. 25).  She determined that the treatment record and the consultative examinations in this case failed to reflect symptoms and limitations of a degree indicated by Dr. Concepcion. This finding is supported by the reports from Drs. Greenway and Lagarde, both of whom found that claimant was exaggerating symptoms and/or malingering.  (Tr. 431-34; 501-05).

Specifically, claimant asserts that the ALJ erred in failing to consider the factors for rejecting a treating physician's opinion under 20 C.F.R. § 404.1527(b) and (c).  [rec. doc. 20, p. 5].  In *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), the Fifth Circuit held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization.  *Id*. at 621 (*citing Newton*, 209 F.3d at 456); 20 C.F.R. §§ 404.1527(c) and 416.927(c).

Because other treating physicians' opinions were available, however, the ALJ was not required to analyze the criteria for rejecting Dr. Concepcion's treating source opinion.  The Fifth Circuit has held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical evidence contradicting that opinion.  *Jones v. Colvin*, 638 F.App'x 300, 304 (5th Cir. 2016); *Wooten v. Colvin*, 2016 U.S. Dist. LEXIS 38364 n. 1 (N.D. Tex. March 24, 2016); *Qualls v. Astrue*, 339 F.App'x 461, 467 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it"); *see also Thibodeaux v. Astrue*, 324 F.

---

meet the test for controlling weight."

App'x. 440, 445 (5th Cir. 2009) (*citing Newton*, 209 F.3d at 453, 456) (when the record contained "reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, . . . the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2).").

Here, in controverting Dr. Concepcion's opinion, the ALJ relied on the opinions of Drs. Greenway and Lagarde, who were examining physicians.  Thus, unlike *Newton*, there is competing first-hand medical evidence available.  *See Newton*, 209 F.3d at 458 (citation omitted) ("This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.  Nor is this a case where the ALJ weighed the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion.").  Conflicts of evidence are for the Commissioner, not the courts, to resolve. *Heck v. Colvin*, 2016 U.S. Dist. LEXIS 96678, at *45 (E.D. La. April 5, 2016) (*citing Byrd v. Comm'r of Soc. Sec.*, 368 F. App'x. 542, 543 (5th Cir. 2010)).  Thus, the ALJ was free to find that the other examining physicians' opinions were more well-founded than Dr. Concepction's, and was therefore not required to specifically consider each of the § 404.1527 factors before reaching a final decision.  *Jones*, 638 F. App'x. at 305; *Qualls*, 339 F.App'x at 467.

Next, claimant argues that the ALJ erred in discounting Dr. Concepcion's opinion on the grounds that she "apparently relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what claimant reported." [rec. doc. 20, p. 5]; (Tr. 28).  The ALJ noted, however, that claimant had provided inconsistent information regarding his activities.  (Tr. 26).  She observed that while

claimant reported to Dr. Lagarde that he was able to perform all grooming activities of daily living independently, prepare simple meals, and handle money, and was able drive himself to a consultative examination, attend church, and attend school; he testified that he did very little, did not like to be around people and isolate himself, and spent his day sitting or lying around watching television or listening to the radio.  (Tr. 26).

It is appropriate to consider the claimant's daily activities when deciding the claimant's disability status.  *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995).  Additionally, the ALJ's credibility assessment is entitled to great deference.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). Thus, the ALJ was entitled to discredit his inconsistent testimony.  *See Steen v. Commissioner of Social Sec.*, 2009 WL 1873518 (N.D. Miss. June 30, 2009) (opinion affirmed where ALJ afforded psychological report significant weight but the opinion was not controlling, because it was based on applicant's subjective complaints that were not supported by medical evidence); *Addison*, 2015 WL 4635456, at *6 (*citing Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) ("[i]t is appropriate for an ALJ to discredit a claimant's subjective complaints due to contradictory medical reports").

Additionally, claimant argues that Dr. Concepcion's opinion should be entitled to more weight because he is a psychiatrist, rather than a psychologist like Drs. Greenway and Lagarde. [rec. doc. 20, p. 5].  The Commissioner correctly observes that both licensed physicians and licensed certified psychologists are "acceptable medical sources" under the Social Security Regulations.  20 C.F.R. § 404.1513(a)(1).  [rec. doc. 21, p. 6].  Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical

18

opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *Thibodeaux*, 324 F. App'x. at 445. Thus, this argument lacks merit.

The undersigned also observes that Dr. Concepcion's questionnaire was in a form containing numerous questions, some requiring narrative answers and others merely responsive checkmarks, regarding claimant's condition. Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. *Heck*, 2016 WL 4004577, at *12 (*citing Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); *Peck v. Barnhart*, 214 F. App'x 730, 738 (10th Cir. 2006) (ALJ provided legitimate reasons for rejecting doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the treatment notes); *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written

reports or persuasive testimony, are not substantial evidence.")).   Thus, the ALJ was entitled to give this opinion less weight.

Further, claimant asserts that the ALJ erroneously considered the "possibility" that Dr. Concepcion was simply trying to assist claimant.  [rec. doc. 20, p. 6].  The ALJ noted that the "possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (Tr. 29) While she acknowledged that it was difficult to confirm this motive, the ALJ observed that it was "more likely in situations where the opinion in question departs substantially from the rest of the evidence in the record," as in this case.  (Tr. 29).  Courts have found, however, that potential bias is a factor to be considered by the ALJ.  *See Sullivan v. Commissioner of Social. Sec. Admin*., 353 F. App'x. 394, *396 (11th Cir. 2009) (substantial evidence supported conclusion that ALJ discounted treating physician's opinion for good cause where one of the major reasons ALJ gave treating physician's assessment little evidentiary weight was because she was clearly sympathetic to claimant).[4]  Thus, this argument lacks merit.

Finally, claimant argues that the ALJ should have sought clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e), citing *Newton*, 209 F.3d at 453.  [rec. doc. 20, p. 6].  The clarification rule was repealed in 2012.  *See*

---

[4]*But see Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993) ("there is no presumption of bias in the treating physician's opinion. Rather, the ALJ has the ability, as the trier of fact, to consider the physician's possible bias"); *Oshkeshequoam v. Barnhart*, 274 F.Supp. 2d 985, 999 (C.D. Ill. 2003) (ALJ cannot presume bias on the part of a treating physician; any claim of bias must be substantiated through evidence in the record).

How We Collect and Consider Evidence of Disability, 77 FR 10651-01 (February 23, 2012)

(effective March 26, 2012).  Thus, this argument lacks merit.

### b. Did the ALJ Err in Relying on Her Own Subjective Impressions and Giving Improper Weight to the State Examiners' Opinions?

Next, claimant argues that the ALJ improperly gave more weight than merited to the

opinions of the State examiners.  [rec. doc. 20, p. 7].

The Social Security Regulations provide that state agency medical consultants are

considered as experts in Social Security evaluation and their findings must be treated as expert

opinion evidence:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. § 404.1527(e)(2)(i); 20 C.F.R. 416.927(e)(2)(i); *see also* SSR 96-6p (July 2, 1996)

("[f]indings of fact made by State agency medical and psychological consultants and other

program physicians and psychologists regarding the nature and severity of an individual's

impairment(s) must be treated as expert opinion evidence of nonexamining sources at the

administrative law judge and Appeals Council levels of administrative review."); *Hardin v.

Astrue*, 2011 WL 1630902, at *7 (N.D. Tex. Mar. 31, 2011), *report and recommendation

adopted*, 2011 WL 1633132 (N.D. Tex. Apr. 29, 2011) (State agency medical or psychological

consultants are considered experts in the Social Security disability program and their opinions

may be entitled to great weight if they are supported by the evidence.).

21

Under established law, the ALJ is entitled to give great weight to the opinions of the State agency consultative examiners where they are supported by the evidence, as in this case.  In any event, the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the ALJ, even if the evidence preponderates against the ALJ's decision.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Luckey v. Astrue*, 458 F. App'x. 322, 326 (5th Cir. 2011) (*citing Bowen*, 864 F.2d at 343) ("the ALJ, and not this Court, must decide what weight to give the proffered medical evidence.").  Claimant seeks to have this Court reweigh the evidence and substitute its judgment for that of the Commissioner, but that is neither the Court's place nor its prerogative.  *Id*.  (*citing Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).  Thus, the decision must stand.

Additionally, claimant asserts that the ALJ erroneously considered his demeanor in her decision.  [rec. doc. 20, p. 10].  The ALJ noted that among the factors influencing her conclusions was claimant's "generally unpersuasive appearance and demeanor" while testifying at the hearing.  (Tr. 27).  In particular, she noted that claimant betrayed no evidence of pain or discomfort while testifying at the hearing.  (Tr. 28).  It is well established that the absence of objective factors indicating the existence of severe pain -- such as limitations in the range of motion, muscular atrophy, or impairment of general nutrition, can justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378,1384 (5th Cir. 1988).

While exclusive reliance upon demeanor in credibility determinations is inappropriate, it is not reversible error for an ALJ to consider demeanor as one of several factors in evaluating a claimant's credibility.  *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).  As demeanor was

but one of several reasons for finding claimant's complaints incredible, consideration of that factor was not improper.  *Id*.

Further, claimant assets that the ALJ failed to properly consider the testimony of his friend, Arthur Russo.  [rec. doc. 20, p. 11].  The responsibility of weighing the evidence and determining the weight of witnesses' testimony opinions lies with the ALJ in the first instance. *Chittenden v. Barnhart*, 2002 U.S. Dist. LEXIS 23196, at *38-39 (E.D. La. Oct. 21, 2002); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly"); *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (the Court is "not permitted to . . . substitute its own judgment for that of the Commissioner, or even the testifying witnesses."). Thus, the ALJ's credibility determination is entitled to deference.

### c.  Is the ALJ's RFC Finding Supported by Substantial Evidence or by the Opinions of the Vocational Expert?

Next, Claimant argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by the evidence.

Social Security Ruling 96-8p provides, in pertinent part, as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p (July 2, 1996).

In particular, claimant asserts that the ALJ's RFC assessment fails to meet controlling legal standards because she failed to include any limitations due to the combined impact of multiple impairments. [rec. doc. 20, pp. 12-14].  He argues that the ALJ failed to include all limitations he found resulting from his impairments in his hypothetical questions to the VE, and that additional hypotheticals posed by claimant's counsel were "more valid and instructive because they more adequately encompass" the range of his mental and physical impairments. [rec. doc. 20, p. 14].

It is well established that the  ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La. 2000).  Here, claimant's attorney had the opportunity to incorporate all of the limitations asserted by claimant.  As the hypothetical to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct any deficiencies, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Additionally, claimant argues that the ALJ failed to properly assess the likely effects on his abilities to sustain and maintain work.  [rec. doc. 20, p. 17].  However, since the issuance of its decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), the Fifth Circuit has determined that the Commissioner is not required to make a specific finding regarding the claimant's ability to maintain employment in every case.  *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Frank v. Barnhart*, 326 F.3d 618, 619 (5ᵗʰ Cir. 2003).  As the court stated in *Frank*:

> *Watson* requires a situation in which, by its nature, the claimant's physical ailment
> waxes and wanes in its manifestation of disabling symptoms.  For example, if
> [claimant] had alleged that her degenerative disc disease prevented her from
> maintaining employment because every number of weeks she lost movement in
> her legs, this would be relevant to the disability determination.  At bottom,
> *Watson* holds that in order to support a finding of disability, the claimant's
> intermittently recurring symptoms must be of sufficient frequency or severity to
> prevent the claimant from holding a job for a significant period of time.  An ALJ
> may explore this factual predicate in connection with the claimant's physical
> diagnosis as well as in the ability-to-work determination.  Usually, the issue of
> whether the claimant can maintain employment for a significant period of time
> will be subsumed in the analysis regarding the claimant's ability to obtain
> employment.  Nevertheless, an occasion may arise, as in *Watson*, where the
> medical impairment, and the symptoms thereof, is of such a nature that separate
> consideration of whether the claimant is capable of maintaining employment is
> required.

(emphasis added). *Id*. at 619.

Here, claimant argues that he is unable to maintain employment.  Claimant has not

shown, however, that his condition "waxes and wanes" in its manifestation of disabling

symptoms.  *Frank*, at 619.  Thus, the ALJ was not required to make a separate finding that

claimant could sustain employment.

### d.  Should the ALJ have Found Claimant Disabled based on the Combined Impact of Multiple Impairments?

Finally, claimant argues that the ALJ failed to consider the combined impact of his

multiple impairments.  The ALJ specifically noted, however, that she was required to analyze the

effect of each of claimant's ailments and the "combined effect of all impairments" in reaching a

decision on severity.  (Tr. 20).  While claimant asserts that the ALJ failed to consider his

impairments of carpal tunnel syndrome, radicular symptoms in his left upper extremity and

potential peripheral nerve injury in the upper extremities, the record reflects that she analyzed the reports relating to these conditions.  (Tr. 489).[5]

In the decision, the ALJ specifically considered claimant's complaints of carpal tunnel syndrome.  (Tr. 20).  She noted that records from Iberia Comprehensive Community Health Center indicated good range of motion of all joints, and no indication of complaints of hand or wrist pain.  While the ALJ observed that claimant had complained of wrist pain, she stated that Dr. Murina found only a "possible" mild carpal tunnel syndrome on the right wrist, which did not impose a limitation.  (Tr. 21, 427)

Additionally, the ALJ noted that while claimant indicated in his Function Report that he had difficulty holding objects, there was little evidence of carpal tunnel and no evidence of functional limitations associated with it.  (Tr. 27).  She also found that there was no impairment which could cause the alleged numbness and/or weakness in his lower extremities, and there was no objective evidence to support these allegations.

Further, the ALJ observed that claimant had not generally received the type of medical treatment expected for a totally disabled individual.  She noted that the record revealed relatively infrequent trips to the physician.  (Tr. 27).  It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability.  *Villa*, 895 F.2d at 1024; *Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v.*

---

[5]Claimant also argues that the ALJ failed to consider his urine control problems.  [rec. doc. 20, p. 15]. However, Drs. Murina and Ritter found no limitations due to this impairment.  (Tr. 427, 493).

*Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms).

Moreover, the ALJ found that claimant failed to follow up with Dr. Sledge's recommendations for further testing and occupational therapy. (Tr. 27). She observed that although claimant indicated that worker's compensation would not give approval, he offered no further explanation for his lack of treatment for his allegedly disabling condition. She also noted that even if claimant could not afford treatment, it would be available to claimant through the state's charity hospitals and clinics.[6] Further, she observed that at the consultative examination with Dr. Lagarde, five of the eight medication bottles were empty, which gave cause for her to question medication compliance. (Tr. 27). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

Significantly, the ALJ noted that the record reveals that claimant's treatment had been generally successful in controlling his mental symptoms. (Tr. 27). The records confirm that when claimant was compliant with his medications, his symptoms were well-controlled, and that exacerbations of his symptoms occurred when he was non-complaint. (Tr. 451-52, 479, 483-84, 514-15, 518, 524-26, 528). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace*, 813 F.2d at 59.

---

[6]In the Fifth Circuit, the rule is that if the claimant cannot afford the prescribed medical treatment or medicine, and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law. (emphasis added). *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). That is not the case here, where charity services are available in the area.

Of utmost importance is evidence in the record of malingering.  The ALJ noted that the record contained "clear evidence" that claimant had "consciously attempted to portray limitations that were not actually present in order to increase the chance of obtaining benefits."  (Tr. 28).  This finding is supported by the opinions of the examining psychologists, Drs. Greenway and Lagarde.  (Tr. 433, 504).

An ALJ may find that incomplete effort, inconsistent performance, and exaggerated responses weigh against a claimant's credibility.  *Haywood v. Soc. Sec. Admin.*, 2015 WL 846210, at *7 (E.D. La. Feb. 25, 2015) (*citing White v. Astrue*, 2009 WL 763064, at *12 (N.D. Tex. Mar. 23, 2009).  As noted by the ALJ, Drs. Greenway and Lagarde found evidence of malingering, which diminished claimant's credibility.  It is well established that the ALJ's assessment as to claimant's credibility is entitled to great deference.  *Newton*, 209 F.3d at 458; *see also Londo v. Comm'r of Soc. Sec.*, 2011 WL 3502476, at *3 (W.D. La. July 25, 2011), *report and recommendation adopted*, 2011 WL 3606709 (W.D. La. Aug. 9, 2011) (affirming ALJ's credibility finding where Dr. Greenway stated that a disingenuous presentation of mental health problems was obvious during claimant's mental status exam and clinical interview and diagnosed malingering).  Accordingly, claimant's argument lacks merit.

## II. CONCLUSION

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 26th day of September, 2016, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

29